UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BLACK DIAMOND INVESTMENTS, LLC          CIVIL ACTION NO. 12-2079

VERSUS                                  JUDGE STAGG

CHESAPEAKE LOUISIANA, LP, ET AL         MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

**Introduction**

     Black Diamond Investments, LLC ("Black Diamond") stopped receiving payments on an overriding royalty ("OR"). It filed suit in state court against five defendants and prayed for payment of the royalties plus damages. Defendant Chesapeake Louisiana, LP ("Chesapeake") removed the case despite (1) the lack of diversity between Black Diamond and three of the defendants and (2) the lack of consent to removal from the fourth defendant. Chesapeake asserted that the lack of diversity and consent could be overlooked because the other four defendants were improperly joined.

     Black Diamond filed a Motion to Remand (Doc. 12) and challenged the improper joinder arguments. The defendants who were alleged to have been improperly joined then filed motions for leave to file counterclaims and crossclaims (Docs. 15 and 23) in which they attack the viability of the 1952 lease under which Black Diamond receives its OR. A new party filed a Motion to Intervene (Doc. 22) to seek a declaration that its 2012 mineral lease on the same property is superior to the allegedly expired 1952 lease. For the reasons that

follow, the motion to remand will be granted, and the other motions will be left for resolution by the state court.

**Relevant Facts**

J. T. Wurtsbaugh, in 1952, granted a mineral lease to Gilbert Johnson, Jr. on land in Sections 1 and 2 of a township in DeSoto Parish, Louisiana. The lease continued past its primary term because of operations and production. The rights of Mr. Johnson as lessee (to explore for and produce minerals) have passed through several hands. By 1993, they were held by Faulconer Energy Corporation and two individuals. The Faulconer group assigned their interest as lessees with respect to the North Half of Section 2 (less than the entire acreage covered by the 1952 lease) to BoMar Oil & Gas, Inc. It is that approximately 320 acre tract ("the Subject Property") that is at issue in this case.

Hallmark Oil and Gas Company, Inc. eventually came to hold BoMar's leasehold interest in the Subject Property. Hallmark executed an assignment in 2009 that granted its leasehold interest to Chesapeake Louisiana, LP ("Chesapeake") and Black Diamond. Hallmark granted (1) Chesapeake a leasehold interest in all depths below the Cotton Valley Formation, subject to an OR; and (2) Black Diamond a leasehold interest in all other depths, plus Hallmark's OR and reversionary rights to the deep rights granted to Chesapeake. Mr. Wurtsbaugh's position as the owner of a mineral servitude on, and the lessor of, the Subject Property is now occupied by three individuals referred to as the Sample Defendants.

Petrohawk Operating Company ("Petrohawk Operating"), as operator, completed a Haynesville Shale well on the Subject Property in 2010 and began producing natural gas

from it. The record implies that this production is from the deep zones on which Chesapeake holds the rights of lessee, subject to the OR held by Black Diamond.

Chesapeake made some payments to Black Diamond in connection with the well but stopped paying on the OR after March 2011. When Black Diamond made demand for payment, Chesapeake responded that Petrohawk Operating had issued a revenue reversal for payments to Chesapeake "due to a dispute over deep rights in the well." Chesapeake said that it had in turn placed Black Diamond in negative suspense to recoup Black Diamond's share (more than $20,000) of the reversal. Black Diamond then wrote Petrohawk Operating, stated that it was not aware of any conflicting claims to the deep rights, requested a copy of the title opinion or other documentation relied on by Petrohawk Operating to support the reversal of revenue, and demanded payment of all royalties due.

Black Diamond later filed suit in state court against Chesapeake, Petrohawk Operating, and the Sample Defendants. The petition set forth the basic facts concerning Black Diamond's interest and the cessation of royalty payments. It also alleged that the Sample Defendants had caused a cloud on Black Diamond's title by protesting the payments to it and had coerced or conspired with Petrohawk Operating to interrupt the payments. Black Diamond prayed for payment for all production attributable to its OR, plus penalties and attorney fees available under Louisiana law, and cancellation of the assignment from Hallmark to Chesapeake (which would potentially vest Hallmark's former deep rights in Black Diamond). The petition also asserted that Black Diamond was entitled to damages from (1) Petrohawk Operating for the unlawful withholding of the production payments and

(2) the Sample Defendants for unlawfully creating a cloud on Black Diamond's title and interfering with production payments due Black Diamond.

Chesapeake (Oklahoma) removed the case based on an assertion of diversity of citizenship between it and Black Diamond (Louisiana). Chesapeake acknowledged that the Sample Defendants are, like Black Diamond, citizens of Louisiana, but it argued that the Sample Defendants could be ignored because they were improperly joined. Petrohawk Operating (Texas) is diverse in citizenship from Black Diamond, but it did not consent to the removal as required by 28 U.S.C. § 1446(b)(2)(A). Chesapeake asserted that Petrohawk's consent was not required because it, too, was improperly joined. Black Diamond filed, within 30 days of removal, a Motion to Remand that challenged the improper joinder pleas and raised both the jurisdictional and procedural challenges to the removal.

The Sample Defendants filed an answer in state court before the case was removed. Doc. 10. The final paragraph of the pleading states their intent to assert a reconventional demand (counterclaim) against Black Diamond and a crossclaim against Chesapeake for cancellation of the 1952 lease to the extent it covers the Subject Property. The Sample Defendants stated that they had made statutorily required pre-suit demands but had to wait at least 30 days for a response before they could file their intended claims.

Soon after removal, the Sample Defendants did file a Motion for Leave to File Counterclaim and Crossclaim (Doc. 15) as promised. Petrohawk Operating filed a similar Motion for Leave to File Counterclaim and Crossclaim (Doc. 23). The proposed claims assert that the rights of the lessee under the 1952 Wurtsbaugh lease were divided in 1993

when the Faulconer group assigned their interest in the lease with respect to the North Half of Section 2 (the Subject Property) to BoMar. The Sample Defendants and Petrohawk Operating contend that the 1952 lease terminated with respect to the Subject Property in about 1992 after production from a well on that particular tract ceased, even though the lease continues in effect as to the other leased land due to production on Section 1.

The Sample Defendants, apparently confident in their position that the 1952 lease terminated, signed a lease in June 2012 to Petrohawk Properties, LP ("Petrohawk Properties") of the Subject Property, limited to certain depths but inclusive of the Haynesville Shale formation. Petrohawk Properties (Texas; Delaware) has filed a Motion to Intervene (Doc. 22) and sue Black Diamond (Louisiana) and Chesapeake (Oklahoma). Its proposed complaint in intervention makes the same attack on the 1952 lease as in the proposed counterclaims and crossclaims by the Sample Defendants and Petrohawk Operating. If the parties on this side of the dispute are correct that the 1952 lease was divided and terminated with respect to the Subject Property, then the Petrohawk Properties lease is valid and Black Diamond's OR is expired.

**Improper Joinder**

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship. Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff. That strict requirement would, on its face, permit a plaintiff to name as a

defendant any citizen of his home state and defeat removal. To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed. Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968). The Fifth Circuit has since adopted the term "improper joinder" to describe the doctrine, but there is no substantive difference between the two terms. Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 n. 1 (5th Cir. 2004) (en banc).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Only the second way is at issue in this case. That second test asks whether the defendant has demonstrated there is no reasonable basis for the district court to predict the plaintiff might be able to recover against the in-state defendant. Smallwood, 385 F.3d at 573; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

**Analysis**

Chesapeake argues in its opposition that the relief Black Diamond requests in its petition – payments due for production under the well and cancellation of the Hallmark assignment to Chesapeake – are properly directed at Chesapeake but not the other defendants. The prayer portion of Black Diamond's petition does list only those forms of relief, but the body of the petition plainly attempts to state a claim against and seek damages from the Sample Defendants and Petrohawk Operating.

Black Diamond alleges in its petition that the Sample Defendants have taken no steps to cancel the 1952 lease but have caused a cloud on Black Diamond's title by protesting

payments and challenging with Petrohawk Operating Black Diamond's interest. Petition, ¶¶ 37-43. Black Diamond asserts that it "is entitled to damages, penalties, interest, and attorney's fees from the Sample defendants for unlawfully creating a cloud on Black Diamond's title and without provocation or basis interfering with the payments due Black Diamond for production on the Property." ¶ 46. A similar demand for damages and penalties is made against Petrohawk "for the unlawful withholding of [Black Diamond's] portion of production and payment." ¶ 45.

Chesapeake argues that Black Diamond does not have a contractual relationship with Petrohawk Operating and has not explained how its claims would be viable under Louisiana law, which Chesapeake contends is "a necessary showing to defeat a claim of improper joinder." Chesapeake is incorrect about the relative burdens with respect to improper joinder. It is not Black Diamond's burden to defeat Chesapeake's plea of improper joinder. Rather, Chesapeake is the party with the burden. "The doctrine of improper joinder is a 'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007). The unchallenged factual allegations in the petition are taken in the light most favorable to Black Diamond. Id. Important here, any ambiguities in state law must be resolved in favor of Black Diamond. Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004).

Chesapeake argues that Black Diamond cannot make out a claim against Petrohawk Operating because the operator is not a party to the assignment under which Black Diamond

claims its OR. Chesapeake does not, however, cite any Louisiana decisions that would bar Black Diamond's claim against the operator and lessor in a setting where the OR owner claims it is not being paid due to the lessor's wrongful clouding of title and the operator withholding payments otherwise due.

The Fifth Circuit applied Louisiana law in <u>Huggs, Inc. v. LPC Energy, Inc</u>., 889 F.2d 649 (5th Cir. 1989) to a claim by the owner of an OR against an operator who allowed the lease to expire. The operator, much like Chesapeake, argued that there was no privity of contract between the two so there could be no breach of contract damages awarded. The Fifth Circuit examined Louisiana law and affirmed a judgment for the OR owner based on tort law. This demonstrates that the lack of privity of contract between Black Diamond and Petrohawk Operating does not mean Black Diamond cannot make out a claim against the operator.

The challenge to Black Diamond's claim against the Sample Defendants is on similar footing. Chesapeake has not pointed to any law that would bar Black Diamond from seeking damages from the Sample Defendants for clouding title to the lease and related OR. Louisiana courts have recognized a claim for damages for clouding or slandering title. <u>See Maniscalco v. Shell Petroleum, Inc</u>., 146 So. 33 (La. 1933). To the extent there is any uncertainty about the applicability of that law to these facts, it must be resolved in favor of Black Diamond. <u>Gray</u>, 390 F.3d 400, 405 (no reported MS cases on point, coupled with unreported district court decisions favorable to plaintiff; defendant did not meet improper joinder burden).

The court need not resolve the claims in this setting or even estimate the likelihood they will survive more substantive challenges such as summary judgment. It need only determine whether Chesapeake has shouldered its heavy burden of showing that Black Diamond has no reasonable possibility of recovery in state court against the Sample Defendants or Petrohawk Operating. Chesapeake, which made its challenge based solely on the allegations in the petition, has not met that burden. Black Diamond's motion to remand will be granted, subject to the stay set forth in the accompanying order. The other motions will be left for resolution by the state court. Given the volume of post-removal proceedings in this case, counsel for the parties should ensure that all relevant answers and motions filed with this court are filed in the state court after remand.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of April, 2013.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE